*248 OPINION.
Smith:
The Commissioner determined the March 1, 1913, fair market price or value of the shares of stock sold by the decedent in January, 1921, at $73.12 per share. This value is slightly in excess of the book value at the basic date. The petitioner contends that the value ivas much greater than that, but has left the exact amount for the determination of the Board. At the hearing the petitioner put on the stand an accountant who testified that in his opinion a prospective purchaser of the corporation of the Young <& Yann Supply Co. in 1913 would have been justified in paying $275,000 or $300,000 for the assets of the business which, on December 31, 1912, had a book value, measured by capital stock, undivided profits, and reserve for contingencies, of $148,063.40. In his opinion a prospective purchaser could reasonably have expected profits of $30,000 a year from the business, and an industrial enterprise that was assured a return, year in and year out, of 10 per cent upon its capital investment was worth ten times the annual yield-
The evidence indicates that the success of the business was due in a very large part to the efforts of the decedent and Yann. They drew relatively small amounts as salaries during years prior to 1913. On cross-examination the witness Yann testified as follows:
Q. Do you think that had you and Mr. Young sold your stock in the corporation [in 1913] that the corporation could have carried on the business as successfully?
*249 A. No, sir; we did not have the organization. We could not afford the organization to do that.
Q. What is that?
A. We could not afford — we did not have an organization that could do that. We were the executives. We did not have any men in our employ.
Q. Assuming you and Mr. Young had died on March 1, 1913, what would have happened to that business?
A. Well, that is problematical. I do not see hardly how it could have gone on. Of course it' would have been sold out probably.
Q. What was your salary in 1906 from the Young & Vann Supply Company?
A. I have forgotten. I believe it was $250 per month.
* * * * * * *
Q. Did you consider that you were taking out of the business sufficient compensation for the services rendered by you, or did you figure you were a stockholder and would share in the profits of the corporation, and only took out such funds as was necessary?
A. That is the way I considered it.
* * * * * * *
Q. Mr. Young only took out such drawing account as he needed, and left the other to be taken in the nature of dividends?
A. In the nature of capital; we needed capital.
Q. You need capital in the business?
A. Yes.
Q. In other words, he did not consider he was drawing an amount from the corporation'equal to the services which he rendered to the corporation?
A. We thought like we would get the benefit later.
We think that the sale of a few shares of stock at book value to certain employees of the corporation during the year 1912 is no indication of the “ fair market price or value ” of the shares on March 1, 1913. The circumstances under which the sales were made must be taken into consideration. Walter v. Duffy, 287 Fed. 41. In the absence of sales, we must look to other evidence of value. In a recent case, Boyd v. Reiner, 5 Am. Fed. Tax Rep. 6069, the District Court for the Western District of Pennsylvania stated:
Now, in determining the intrinsic value of this property, we must not confine ourselves to one factor in determining value, * * *. We must necessarily look to every factor that would have any bearing whatever on the determination of that fact.
Likewise, in the instant case, we must look at all the factors bearing'upon the value of the shares of stock. The corporation, Young & Yann Supply Co., was carrying on a profitable business in a mineral district where the demand for the products sold by the corporation was rapidly increasing. The sales of the corporation were mounting rapidly and the profits were correspondingly increasing. The name of the ’ petitioner corporation was becoming known. The profits for the three-year period prior to 1913 were in excess of 25 per cent on the capital actually invested. We think that this warrants a conclusion that the shares of stock had a value in excess of the book value. It is to be noted, however, that *250 the corporation had no monopoly in its field. The principal officers were inadequately compensated for their services and the prosperity of the business depended to a large extent upon the activities of the decedent and Vann.
From a consideration of all of the factors, we are of the opinion that the fair value of the shares of stock on March 1, 1913, was in excess of the amount found by the Commissioner, and that the fair market price or value of each of the 94 shares of stock sold by the decedent in January, 1921, was, on the basic date, $100, which value was in excess of the cost to the decedent.

Judgment will be entered on IS days' notice, under Rule 50.